O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN KEITH BRIM, | ) | Case No. CV 12-08107 DDP ✓ |
| | ) | [TERM GAVEL ON DOCKET NO. 11] |
| Plaintiff, | ) | |
| | ) | *Appeal No. 14-55792 and* |
| v. | ) | *Appeal No. 13-56477* |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **ORDER RE CERTIFICATE OF** |
| | ) | **APPEALABILITY AND "REQUEST TO** |
| Defendant. | ) | **WITHDRAW"** |
| | ) | |
| | ) | [CV 99-02201 DDP] |
| | ) | [SA CR 93-00098 LHM] |
| | ) | [Dkt. Nos. 484, 495, 496] |

In 1996, Plaintiff was convicted of conspiracy to manufacture phencyclidine ("PCP"), in violation of 21 U.S.C. § 846, 841(a)(1), possession of piperidinocyclohexanecarbonitrile (PCC) and piperidine with intent to manufacture PCP, in violation of 21 U.S.C. § 841(a)(1), and attempt to manufacture PCP, in violation of 21 U.S.C. § 841(a)(1). (Cr. Dkt. Nos. 17, 223.) All three convictions were based on possession of certain precursor chemicals used in the manufacture of PCP; no actual PCP was found. (Dkt. No. 428, Magistrate's Report & Recommendation ("R&R") at 6-7.) He was

cc: 9th Circuit Court of Appeal

sentenced to two life sentences and another sentence of 20 years, all to run concurrently. (Cr. Dkt. No. 245.) Plaintiff appealed his conviction and sentence to the Ninth Circuit, which vacated the conviction as to the latter two charges but left the life sentence for the first charge intact. United States v. Brim, No. 96-50530, *1, *3 (9th Cir. Oct. 29, 1997).

Various petitions for relief have followed over the intervening years. Relevant to this order, on November 24, 2003, the Court denied Plaintiff's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. On September 14, 2012, the Court denied Plaintiff's motion to re-consider that original denial under § 2255, as well as denying a motion under Fed. R. Crim. P. 36 to re-open the judgment to correct an alleged "clerical error." (Cr. Dkt. No. 462. See also Cr. Dkt. No. 461 & Civ. Dkt. No. 39 (underlying motions).) Plaintiff has since appealed that decision to the United States Court of Appeal, Ninth Circuit, creating Appeal No. 13-56477. (Cr. Dkt. No. 484.)

On July 19, 2013, the Court also denied another motion for relief under § 2255, as well as motions for appointment of counsel and corrective judgment. (Cr. Dkt. No. 483.) Plaintiff has appealed that decision to the Ninth Circuit as well, creating Appeal No. 14-55792. (Cr. Dkt. No. 491.)

On May 21, 2014, the circuit court issued an order remanding the case to this Court for the limited purpose of granting or denying a Certificate of Appealability ("COA") in each of the above appeals.

///

///

**I. Dkt. No. 484/Appeal No. 13-56477**

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253.  The order at issue here was in response to two motions.  In the first motion, the grounds for relief were, generally, (1) "newly discovered evidence" that showed Plaintiff's innocence as to conspiracy, and (2) both "newly discovered evidence" and clarifications regarding expert reports discussing how much PCP could have been made from the quantities of precursor found in Plaintiff's possession.  (Civ. Dkt. No. 39.) The second motion alleged, similarly, that the magistrate had made a "clerical error" in construing the expert reports.  (Cr. Dkt. No. 461 at 5-7.)

To meet the "substantial showing" requirement of § 2253, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court denied the motions for both procedural and substantive reasons.

Procedurally, the Court treated the motions as motions for relief under 28 U.S.C. § 2255, although they were framed by Plaintiff as motions under Fed. R. Civ. P. 60(b) and Fed. R. Crim. P. 36.  This is because both motions were ultimately attempts to revisit a § 2255 petition.  The Court therefore held that the motions were untimely and successive.  (Civ. Dkt. No. 43 at 2.) However, because reasonable jurists might disagree that Plaintiff was, in fact, attempting to lodge a § 2255 petition under a

3

different name in his latter motions, the Court also briefly addressed the merits of his motions and found them groundless. (Id. at 2-3.)  Therefore, the Court also finds it appropriate to address the merits of the motions in assessing the request for a COA.

**A.   Evidence Showing Actual Innocence of Conspiracy**

As to the "new" evidence regarding the conspiracy, it consisted primarily of a supposed inconsistency between police testimony before the grand jury that the co-defendants had "come together" and trial testimony that they had not been found together.  But, first, this is not "new" evidence, as it was already on the record, and second, the evidence Plaintiff claims would have been helpful to him was put before the jury. Plaintiff's own motion showed that the supposedly exculpatory testimony was in the trial transcript.  (Civ. Dkt. No. 39 at 5-6.) No reasonable jurist could find a constitutional violation on this issue.

**B.   Expert Opinions, Letters, and Reports**

Plaintiff was sentenced according to federal sentencing guidelines, which set a "base offense level" in drug cases according to the amount of the drug a defendant possessed or manufactured.  USSG § 2D1.1(c) (1995), available at http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1995/1995_Guidelines_Manual_Full.pdf.  Where the charge is conspiracy to manufacture the drug in question, but no drugs are actually seized, the base offense level is calculated from the amount of the drug the defendant *could* have manufactured.  "Where there is no drug seizure . . . *the court shall approximate the quantity of the*

4

*controlled substance.*" U.S.S.G. 2D1.1, Commentary n.5 (1995) (emphasis added).[1]

Plaintiff was convicted based on the seizure of precursor chemicals used in the manufacture of PCP, rather than actual drugs. Thus, the amount of PCP Plaintiff could have manufactured largely determined his sentence, because it determined his base offense level. Because Plaintiff's criminal history placed him in criminal history category VI, (R&R at 11:11), at any base offense level of 37 or higher Plaintiff's maximum sentence would have been life. USSG § 5, Sentencing Table (1995).

"Approximations of drug quantity must meet three criteria." Kilby, 443 F.3d at 1141. First, the government bears the burden of proving the approximated quantity by a preponderance of the evidence; second, the evidence supporting the approximation "must possess sufficient indicia of reliability to support its probable accuracy"; and third, the court "must err on the side of caution." Id. Plaintiff argues that these criteria were not met as to his sentencing. (Civ. Dkt. No. 39 at 32-39; id. at 33-34 ("The district court's and Ninth Circuit's approximation of drug quantity lacked 'sufficient indicia [of] reliability.'").)

Although the complete trial record is not before the Court, Plaintiff's exhibits show that the trial court took its duties in approximating the quantity of drug product that could have been manufactured seriously. (See Dkt. No. 39, Ex. 5 (trial transcript

---

[1] See United States v. Kilby, 443 F.3d 1135, 1141 (9th Cir. 2006) ("Where none of the drugs has been seized, the district court may approximate the weight of the drugs."); United States v. Macklin, 927 F.2d 1272, 1281 (2d Cir. 1991) (same); United States v. Hyde, 977 F.2d 1436, 1440 (11th Cir. 1992) (same).

5

showing court's reasoning as to drug quantity in sentencing Plaintiff's co-defendant and holding that government had not met its burden as to definition of "PCP" or "phencylidine").) Plaintiff does not and apparently cannot allege any constitutional error as to, for example, lack of due process.  Moreover, as to the determination of his exact level of his base offense, the Ninth Circuit has already noted that even if his base offense level were reduced somewhat (from 38 to 36) to take into account the lack of purity of the precursors, he would still have been subject to a possible life sentence.[2]  United States v. Brim, 148 F. App'x 619, 621 (9th Cir. 2005).

    To the degree that Plaintiff is arguing that the base offense level could not have been approximated *at all* without knowing the purity of the precursor, that argument must be considered waived, as he previously argued only for a reduction to a base offense level of 36.  Id.  In any event, the argument is not compelling. The trial court was required to *approximate* the amount of drug product that could be manufactured.  Any approximation requires making some assumptions.  In this case, the trial court appears to have made an assumption, based on expert opinion, that the precursor was not *so* impure as to significantly decrease the quantities of pure PCP that could be manufactured.  Nor has Plaintiff presented any evidence that that assumption was wrong. Any amount over a single kilogram of pure PCP would have resulted

---

[2] This is because Plaintiff also qualified for certain enhancements and reductions which resulted in a net 1-point increase to his base offense level. (See R&R at 11.)  Thus, if his initial base offense level had been 36, his final offense level after adjustments would have been 37.

6

in a base offense level of at least 36, USSG § 2D1.1(c) (1995), and Plaintiff's *own expert* has put the likely yield at somewhere between 21.7 and 32.5 kg if the precursor were 100% pure. (Civ. Dkt. No. 39, Ex. 8.) Plaintiff has presented no evidence at all that the precursor was, or should have been considered, so impure as to reduce the reasonable approximation of yield to something below a kilogram – that is, to something below one-twentieth of the low-end estimate of Plaintiff's own expert. In short, Plaintiff's new evidence does not seriously call into question the trial court's approximation of the yield *for sentencing purposes*, even if it is admitted that the calculation was not terribly precise.[3]

Nonetheless, in the "Rule 60(b)" motion, Plaintiff argued that he had suffered at least two cognizable constitutional harms. First, he argues that his counsel in the original § 2255 petition was ineffective because counsel did not clarify for the Court that the expert reports showed that the amount of PCP could be produced depended on the purity of the precursor chemical, and purity was never proved at trial. (Civ. Dkt. No. 39 at 36-39.) Plaintiff argues that he gave his attorney a letter from the expert, Dr.

---

[3] Indeed, the act of estimating how much of a chemical *would* have been produced – i.e., attempting to speculate about a counterfactual – is inherently fraught with the possibility of significant error. Moreover, clandestine labs run by amateurs will by their nature be inconsistent in their chemistry – sometimes to the point of explosion, as is well-known, but much more often resulting in products of varying quality. It is questionable whether estimating the production capacity of a hypothetical lab makes sense, as opposed to simply sentencing based on possession of a given amount of precursor. Nonetheless, when defendants are charged with possession of the final drug, but no such drug exists, Congress has commanded the courts to estimate a hypothetical amount, and this command is not quite so unmoored from due process as to be unconstitutional – even if it is likely to yield somewhat inconsistent sentencing from case to case and judge to judge.

Williams, clarifying that point, but that the attorney did not present that letter to Court. (<u>Id.</u>) Instead, the magistrate and this Court both relied on the quantities given in Plaintiff's expert's official report. Plaintiff argues that this was in error – either a general error warranting vacating of his sentence, or a "clerical error," in the sense that the Court misconstrued the report's figures. (<u>See generally</u> Cr. Dkt. No. 461.)

As a second means of approaching more-or-less the same issue, Plaintiff claims that there was, in essence, a <u>Brady</u> violation in the § 2255 process, because the government did not turn over to him an affidavit from a different expert in his co-defendant's case that would also have clarified the need to assess precursor purity. (Civ. Dkt. No. 39 at 29-30.)

Assuming *arguendo* that Plaintiff's motion really was a proper Rule 60(b) motion, the Court had broad equitable discretion to provide relief from its own order, provided Plaintiff showed "extraordinary circumstances" justifying the relief. <u>United States v. Sparks</u>, 685 F.2d 1128, 1130 (9th Cir. 1982). In this case, however, the Court found that the "new" information Plaintiff has presented would not have changed the outcome of the original petition and did not justify relief.

**1.   Ineffective Assistance of Counsel**

Plaintiff's claim of ineffective assistance of counsel fails for three reasons. First, there is no constitutional right to counsel at a § 2255 proceeding, and therefore there can be no ineffective assistance of counsel claim. <u>Sanchez v. United States</u>, 50 F.3d 1448, 1456 (1995). Second, the letter that Plaintiff contends was not presented to the Court was written in 2004, while

8

the Court adopted the magistrate's report and recommendation in 2003. (Dkt. No. 31.)  Thus, Plaintiff's post-conviction counsel had no opportunity to present the letter while the original § 2255 motion was being considered, and thus could not have been ineffective in not doing so.  Third, even if the letter had been presented to the magistrate, it would have been at best redundant, because other evidence before the magistrate already made clear that the final yield calculation would be lower if the precursors were not pure.  The R&R specifically notes that Dr. Williams' original report "cautioned that because no quantitative analysis had been performed, ingredients that were less than one hundred percent pure would cause the yield to be lower than he calculated." (R&R at 12.)  The 2004 "clarifying" letter, which Plaintiff alleges his lawyer should have presented to the magistrate, says much the same thing as the original report:

> A quantitative analysis was not done on the piperidine or the PCC . . . .  In my report, I assumed that each was 100% pure.  Most precursors in clandestine [drug manufacture] are not pure and thus the expected actual yield would be less than that which I gave in my letter to you.

(Civ. Dkt. No. 39, Ex. 8.)  While the 2004 letter might have reiterated the point, it would not have meaningfully changed the analysis conducted by the magistrate, who had already taken the purity problem into account.

**2.  Brady Violation**

Rule 60(b)(3) also provides room for relief from a judgment if there was misconduct by an opposing party.  Here, however, there has not been misconduct by the government.  Plaintiff asserts that

9

the government committed a Brady violation when it did not turn over to him the affidavits and other statements made by Plaintiff's co-defendant's expert witness, Dr. Booker. However, this claim is fatally flawed.

A Brady violation occurs when the government *suppresses* exculpatory information. Brady v. Maryland, 373 U.S. 83, 87 (1963). This strongly implies that the government in some way controls the information and can hide it from the defendant's view. The government is not obliged to point out the existence of every piece of exculpatory information that exists somewhere in the world – let alone the existence of an expert opinion with which other experts could disagree and did disagree. Thus, the government does not have a duty to inform a defendant that a co-defendant has put on or will put on expert testimony contradicting the government's expert testimony – especially when the defendant has had a fair opportunity to call his own experts, and most especially when the thrust of the co-defendant's expert's opinion has been *placed in the public record*. (Dkt. No. 39, Ex. 5 (trial court transcript discussing Dr. Booker's opinion).)

### C. Conclusion

Plaintiff's "newly discovered" evidence as to the estimated drug quantity provided no new substantive information, did not show a Brady violation, and did not call into question the Court's or the Ninth Circuit's conclusions on previous rounds of review. No reasonable jurist could disagree with these conclusions.

However, Rule 60(b)(6) allows relief for "any . . . reason that justifies" it. During the course of reviewing Plaintiff's case while ruling on these motions, the Court's attention has been

10

drawn to the original sentencing documents.  In particular, the Court notes that the Judgment and Commitment Order reads as follows:

> [I]t is the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of: Life.  This term consists of *life imprisonment on each of Counts 1 and 4*, and 240 months on Count 3 of the Indictment, all terms to be served concurrently.  *If released from imprisonment*, the defendant shall be placed on supervised release for a term of 10 years .
> . . .

(Emphases added.)  This statement of the sentence imposed is potentially ambiguous.  On the one hand, it seems to impose two life sentences.  On the other hand, it contemplates release, which is not possible under a life sentence.[4]

Nor does the order simply set conditions of supervised release in the alternative, in case the life sentences are vacated or overturned but the 240-month sentence remains, as can be seen in the next sentence:

> This term [of supervised release] consists of *10 years on each of Counts 1 and 4*, and 3 years on Count 3, all such terms to run concurrently.

(Emphasis added.)  Counts 1 and 4 are the counts on which Plaintiff received life sentences.  Thus, the order clearly contemplates supervised release *as to the supposed life sentences*.  This creates

---

[4]Parole in the federal system was abolished in 1984.  See Pub.L. No. 98-473, Title II, Sec. 218(a)(5), 98 Stat. 2027 (Oct. 12, 1984).

11

an ambiguity on the face of the sentence. Although the judgment and sentences were vacated as to Counts 3 and 4, <u>United States v. Brim</u>, No. 96-50530, *1, *3 (9th Cir. Oct. 29, 1997), the remaining life sentence still suffers this ambiguity. Because the sentence at issue is a life sentence, a reasonable jurist could see the ambiguity on the face of Plaintiff's sentence as requiring relief under Rule 60(b)(6).

It is therefore possible that the Court was incorrect in denying Plaintiff's motion, and a COA is warranted.

**II. Dkt. No. 483/ Appeal No. 14-55792**

Plaintiff has asked to "withdraw" his "pending motion for request of COA." (Cr. Dkt. No. 496.) Plaintiff seems to be under the impression that such a "withdrawal" will expedite his appeal. In fact, the Court is under an order from the Ninth Circuit to consider the COA question, and Plaintiff's appeal will not proceed until the Court renders an answer on that point. (Cr. Dkt. No. 495.) Therefore the Court considers the merits of the appeal and hereby denies the COA, because Plaintiff cannot make a substantial showing of a constitutional violation.

The order at issue here denied relief requested on three grounds. First, it denied relief under a motion based on two new Supreme Court cases. Relief was denied without prejudice for procedural reasons – a second or successive motion must also be "certified . . . by a panel of the appropriate court of appeals," 28 U.S.C. § 2255(h), and Plaintiff had failed to secure such certification. (Cr. Dkt. No. 483 at 2-3.) Requiring a petitioner to meet minimal procedural requirements is not a constitutional violation. Second, the order denied a "request for corrective

12

judgment." This was, in essence, a motion to reconsider the precursor purity issue discussed above. (Id. at 3.) For the reasons discussed in Part I, no new evidence compels the Court to reconsider the issue. Third, the order denied a request for the appointment of counsel. (Id. at 3-4.) As explained in the order, there is no constitutional right to counsel in habeas corpus proceedings. Therefore, denial of appointment of counsel was not a constitutional violation.

The Court finds that no reasonable jurist could disagree with its denial of relief and that a COA is not justified.

**III. Conclusion**

For the foregoing reasons, the Court DENIES Plaintiff a COA as to Appeal No. 14-55792, but grants it as to Appeal No. 13-56477. IT IS SO ORDERED.

Dated: April 14, 2015

DEAN D. PREGERSON
United States District Judge

13